## Singer v. Bugis, Appellant.

*Ejectment—Conveyance—Fraud of creditors—Statute of 13th Elizabeth ch. 5—Evidence—Case for jury.*

In an action of ejectment by a purchaser at a Sheriff's sale against a grantee of the defendant in the execution, it appeared that the defendant was the son of the defendant in the execution and that, at the time the deed was executed, the father was financially embarrassed. It further appeared according to the evidence produced by the plaintiff, that both the defendant and his father had made statements to the effect that the property belonged to the father, and that the purpose of conveyance was to defraud creditors. Under such circumstances, the case was for the jury and a verdict for the plaintiff will be sustained.

Evidence having been introduced showing a common purpose or design by the father and son to hinder, delay or defraud creditors, it was competent for the plaintiff to introduce evidence of subsequent declarations by the father as to the ownership of the property.

In an action of ejectment, where defendant claims he furnished money to make the purchase of the land in question, with the understanding that title to the property should be taken in his

name, he must establish the resulting trust in the land by evidence that is clear, precise and indubitable.

Although the father was indebted to the son at the time the conveyance was made, if the intention of the father and son at the time of the conveyance was not only to secure the amount of indebtedness, but also to place the property beyond the reach of the father's creditors, then, as to such creditors the whole transaction was void.

Argued October 30, 1925. Appeal No. 243, October T., 1925, by defendant from judgment of M. C. Philadelphia County, June T., 1923, No. 533, on verdict for the plaintiff in the case of Jennie Singer v. Louis Bugis. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Ejectment for land in Philadelphia. Before CRANE, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence.

*Paul Riley,* for appellant.—Appellee was a grantee in pursuance of a resulting trust: Beman Thomas Co. v. White, 269 Pa. 261; Jenkins v. Courtwright, 39 Pa. Superior Ct. 232; McPherran's Estate, 212 Pa. 432; Page v. Suspender Co., 191 Pa. 511; Miller v. McAllister, 178 Pa. 140; Snayberger v. Fahl, 195 Pa. 336.

*Evans & Wernick,* for appellee.—No resulting trust existed. Yerkes v. Wilson, 81 Pa. 9; 27 Corpus Juris, page 791, Section 717.

Declarations of grantor were admissible: Boyer v. Weimer, 204 Pa. 295; Wickham v. Berwick, 47 Pa.

Superior Ct. 176; Homewood People's Bank v. Marshall, 223 Pa. 289.

OPINION BY PORTER, J., February 26, 1926:

This is an action of ejectment by a purchaser at sheriff's sale against a grantee of the defendant in the execution, who took title under a deed dated and recorded prior to the entry of the judgment upon which the sale took place. The defendant in the judgment, upon which execution issued and the sheriff sold the property, was Joseph Bugis, who had borrowed from the plaintiff $200.00 in April and $300.00 in June 1920, and as evidence of said indebtedness had, on July 19, 1920, executed and delivered to the plaintiff his judgment note for $500.00. The evidence produced by the plaintiff, which was uncontradicted, warranted findings that the first of said loans was used by Joseph Bugis to make the cash payment when he entered into articles of agreement to purchase the property in question and that the second loan was used by him when he made settlement, under the articles of agreement and took title to the property in his own name and received a deed therefor, on June 28, 1920. Joseph Bugis, on December 31, 1921, conveyed the property to his son, Louis Bugis, this defendant. The judgment note given by Joseph Bugis to the plaintiff had become due on July 19, 1921, but he was unable then to pay the same and upon his request time for payment thereof was extended for six months. The note was never paid and on January 5, 1923, judgment was entered on the note, execution issued thereon and the property was sold by the sheriff, the plaintiff becoming the purchaser at said sale and a deed was duly delivered to her by the sheriff. She subsequently brought this action of ejectment against Louis Bugis, averring that the conveyance to him had been by him received and by his father executed and delivered with the intent

and for the purpose of hindering, delaying and defrauding the creditors of said Joseph Bugis, among them this plaintiff. The plaintiff recovered a verdict and judgment in the court below and the defendant appeals.

The arguments of counsel have in this case taken a very wide range, but the only real question in the case was whether the conveyance by Joseph Bugis to his son was made for the purpose and with the intent, between them understood, of hindering, delaying or defrauding the creditors of Joseph Bugis. The plaintiff produced evidence which, if believed, established that, on December 31, 1921, when the conveyance from the father to the son was executed, the father (Joseph) was indebted and financially embarrassed; that he was indebted to this plaintiff was an undisputed fact. The plaintiff testified that early in January 1922, when she asked Joseph Bugis, in the presence of Louis, this defendant, why he had conveyed the property to Louis, he said, "Well, I was compelled to do it, otherwise my stranger creditors would take from me my house, and if you would be in Philadelphia then I would transfer it to your name, but just at this time it was my son and I done it to him". She testified that Louis at the same time, said, "Mrs. Singer, we will give it to you, what are you worrying about, the house is my father's"—he said, "Well, now, what are you worrying about, you know that note, my father done it perhaps to be protected from the stranger creditors, but not from you. Don't worry and we will pay you. We won't cheat you out of it. It is only for the strangers". This testimony was explicitly corroborated by that of Joseph Breen. Another witness, Simon Breen, testified that about the second week of January 1922 he called at the house of Joseph Bugis and that upon that occasion Joseph Bugis and his son Louis, the present defendant, complained that Jennie Singer, the

plaintiff, had "made such a holler for the money;" that Louis said, "What is she hollering about? What is she making so much fuss? She knows the house is my father's and he only done it, transferred the house to my name to protect himself from strange creditors, as he complained business is very poor, and it would be a matter of a short while that the creditors would come for the house, and to protect himself he did that, and she [Mrs. Singer] is an aunt and he would not want her to lose the money, he signed the house over to my name." This witness testified that he then said, "You better try to straighten things out and settle up"; and that Joseph Bugis then said, "I can't do it now. I have nothing hardly to live on, but I will try to pay her as quickly as possible." If this testimony was true the conveyance from the father to the son was made with the fraudulent design, upon the part of both, to hinder, delay or defraud the creditors of the father and was void as to creditors under the statute of 13th Elizabeth ch. 5. This evidence having been introduced, showing a common purpose or design by the father and son to hinder, delay or defraud creditors, it was competent for the plaintiff to introduce evidence of subsequent declarations by the father, as to the ownership of the property: Boyer v. Weimer, 204 Pa. 299. The witness, Max Swartz, testified that Joseph Bugis, when seeking credit for goods, had declared that he owned the property in question. This evidence certainly required the submission of the case to the jury.

The evidence produced by the defendant by which he attempted to show that he had furnished the money to make the purchase, with the understanding that title to the property should be taken in his name, was neither clear, precise nor indubitable, and failed to establish a resulting trust in his favor: Artz v. Meister, 278 Pa. 583. If the testimony was true he had not

furnished more than $400.00 of the $1500.00 used to make the advance payment and complete the settlement under the articles of agreement. He did produce testimony tending to establish that he had, after his father had taken title to the property, sent other moneys to his father, but whether that testimony was true or false was for the jury. The evidence was not such as to warrant a finding of a resulting trust. It may be that the father was indebted to the son in some amount of money at the time the conveyance was made, but if the intention of father and son at the time the former conveyed the property to the latter was not only to secure the amount of the indebtedness of the father to the son but also to put the balance of the property into such a shape that it could not be reached by the father's creditors, then, as to such creditors, the whole transaction was void: Reehling v. Byers, 94 Pa. 322. The court charged the jury: "If Louis Bugis provided the consideration for the purchase of that property, which he forwarded to his father, Joseph, with no understanding that the title should be taken in his father's name, and if his father took title in his name without the knowledge or consent of the man who furnished the consideration, then he held as a trustee ex malificio," and, in substance, that the property rightfully belonged to Louis. This instruction was more favorable to the defendant than the evidence warranted. In connection with this the court instructed the jury: "If that is what occurred, and he put up the money for the purchase of the property, the defendant Louis then has a valid title as against the purchaser at the sheriff's sale." The testimony produced by the defendant failed to show that at the time of the actual execution of the deed Louis paid to his father any consideration for the transfer; he paid only the charges of the conveyancer.

The testimony produced by the plaintiff was directly contradicted by the defendant. The disputed questions

of fact were left to the jury with instructions of which the defendant has no just cause for complaint. The assignments of error are overruled.

The judgment is affirmed.